# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

### SAVANNAH DIVISION

| | | |
|---|---|---|
| JAMES CASWELL JONES, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV408-051 |
| | ) | [CR405-283] |
| | ) | [CR402-233] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Contending that his trial counsel was ineffective, James Caswell Jones moves this Court for 28 U.S.C. § 2255 relief. Doc. 1.[1] The government opposes that motion. Docs. 3, 4. Jones also moves for leave to conduct discovery, an evidentiary hearing, appointment of counsel, to strike a government response brief, and for "summary judgment." Docs. 9, 10, 12; Cr. docs. 86, 88, 92. Jones's § 2255 motion should be granted in part, and his remaining motions should be denied.

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV408-051. "Cr. doc." refers to documents filed under movant's criminal case, CR405-283 (which, as will be explained below, is the successor to CR402-233).

# I. BACKGROUND

The facts are best viewed through this legal prism: once an accused invokes his Sixth Amendment right to counsel, all police questioning as to the charged offense must cease, and any subsequent waiver of that right— even if made after the administration of *Miranda* warnings—is invalid if secured pursuant to police-initiated interrogation. *Michigan v. Jackson*, 475 U.S. 625, 636 (1986) (once the Sixth Amendment right to counsel is asserted, any subsequent waiver of that right during police-initiated interrogation is invalid).[2] Any "statements obtained in violation of that rule may not be admitted as substantive evidence in the prosecution's case in chief." *Michigan v. Harvey*, 494 U.S. 344, 345 (1990). Defense lawyers who fail to timely object to evidence acquired in violation of a defendant's Sixth Amendment rights can be found to have provided ineffective assistance of counsel, where it can be shown that the case's outcome likely would have been different had the evidence been excluded.

---

[2] *See also Maine v. Moulton*, 474 U.S. 159, 171, 176 (1985) (the Sixth Amendment imposes an "affirmative obligation" upon the government to respect and preserve the accused's choice to rely on his counsel as a "medium" between himself and the government); *Massiah v. United States*, 377 U.S. 201, 206 (1964) (agents may not "deliberately elicit" incriminating statements from a defendant who has invoked his Sixth Amendment right to counsel, even when they do so through use of an informant).

Georgia detective Jeffrey Hein arrested Jones on an outstanding warrant for failure to pay child support, and while searching Jones and his vehicle incident to that arrest, Hein discovered marijuana, crack cocaine, and cash. Cr. doc. 74 (trial transcript, hereinafter "Tr.") at 30-37. Brought before a Georgia magistrate for an initial appearance and bond hearing on the state charges of intent to distribute marijuana and cocaine, Jones answered "yes" to these questions: "Do you desire to be represented by an attorney? Can you afford to hire or retain an attorney?" Doc. 4 ex. A. Following that hearing, Hein questioned Jones about the pending drug charges after advising him of his *Miranda* rights and obtaining a signed waiver of those rights. Tr. at 39; *id.* ex. 5. Jones then confessed to possessing the drugs and cash that Hein had found when he arrested him. Tr. at 39-40. He also revealed that he "had a little bit of marijuana" at his house but then refused to consent to a search, so Hein— reciting Jones's admission in an affidavit —sought and obtained a search warrant to retrieve it. *Id.* at 40-43; doc. 4 ex. B. There Hein found marijuana, two shotguns, and a 9mm pistol. Tr. at 43, 47-48.

After the discovery of the firearms in Jones's home, federal prosecutors took an interest in the case and obtained an indictment

charging him with being a felon in possession of those firearms. CR402-233 (doc. 1, filed Sept. 13, 2002). Savannah attorney Joseph Rahimi, who was appointed to represent Jones, moved to suppress the firearms. The motion contended that they were the fruit of an illegal arrest flowing from Hein's bad-faith delay in executing an outstanding warrant for failure to pay child support, a warrant that Hein allegedly "pocketed" until he could stop Jones on suspicion of drug trafficking. (Mr. Rahimi did not then raise any Sixth Amendment issue.) Agreeing that Hein had unlawfully pocketed the arrest warrant, the district judge granted the motion. The Eleventh Circuit reversed, finding no violation of Jones's constitutional rights arising from his arrest on the child-support warrant. *United States v. Jones*, 377 F.3d 1313, 1314 (11th Cir. 2004).

After unsuccessfully seeking certiorari review by the United States Supreme Court, Rahimi won for Jones a dismissal of the original indictment without prejudice on a Speedy Trial Act violation. CR402-233, doc. 69. The government then re-indicted Jones, this time charging him with unlawful possession of the drugs seized incident to his arrest, as well as with the firearms and additional drugs seized during the execution of the later-issued search warrant. Cr. doc. 1. A jury

convicted him for possession with intent to distribute cocaine base, possession with intent to distribute marijuana, and possession of firearms as a felon. Cr. doc. 78 at 2.

At the start of that trial, Mr. Rahimi argued that the evidence seized from Jones's home should be suppressed because it was based solely upon information gained during an interrogation conducted after he had invoked his right to counsel at his initial hearing before the state magistrate. Tr. at 12-18. The district judge denied the motion as untimely, *id.* at 18, and did so again on a post-trial motion. Cr. docs. 56, 62. The Eleventh Circuit affirmed. *United States v. Jones*, 241 F. App'x. 676, 678 (11th Cir. 2007) (upholding the district judge's finding that the motion to suppress was untimely); Cr. doc. 78 at 3-5.

As the Eleventh Circuit expressly held on direct appeal, by the time of the trial in 2006, Rahimi unquestionably had had plenty of time to develop the Sixth Amendment suppression issue. That is, he could easily have reviewed the state-court appearance form showing that Jones invoked his right to counsel, confirmed that fact with Jones, researched the case law, then timely raised the *Michigan v. Jackson* issue. Yet he did not raise it until the very *morning* of the second trial, claiming it to

be a "new ground" that he had "just discovered," but otherwise citing no Fed. R. Crim. P. 12(e) good cause to excuse his untimeliness. Tr. at 6, 12-21. Jones underscores these facts in arguing that Mr. Rahimi was ineffective in not timely asserting the suppression motion.[3] Docs. 1 & 7.

## II. ANALYSIS

### A. Governing Standards

Claims not raised on direct appeal generally may not be raised on collateral review unless the § 2255 movant shows cause and prejudice for his default. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003). The Supreme Court has made clear, however, that an ineffective-counsel claim may be brought in a § 2255 collateral proceeding, whether or not the claim could have been raised on direct appeal. *Id.* at 504. Further, ineffective assistance of counsel is itself a form of cause that will serve to

---

[3] Jones says he told Rahimi that he had "expressed his desire" to Hein "that he [*i.e.*, Jones] wanted an attorney and that the reports in the government's open file[] clearly indicated that he had stated before a judicial officer that he wanted to deal with the police only through counsel and did not himself initiate further communications, exchanges, or conversations with the officer...." Doc. 1 at 4; doc. 7 at 5. However, Jones does not say *when* he so informed Rahimi. He evidently seeks to establish that at the evidentiary hearing he requests. Doc. 7 at 9 ("Nothing in the record establishes when counsel was (or should have been) aware of the claim which will have to be resolved at an evidentiary hearing"). At the start of the second trial, Rahimi admitted that he had obtained the magistrate appearance form during pretrial discovery. Doc. 7 at 9; *see* Tr. at 15.

excuse a procedural default. *Id.* Jones's claim that Mr. Rahimi was ineffective is therefore properly before this Court. But he must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He

> must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the petitioner's defense or sentencing. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The standard governing counsel's performance is "reasonableness under prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2065. "We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately." *White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992). The petitioner's burden to prove by a preponderance of the evidence that counsel's performance was unreasonable is a heavy one. *See Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). The petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Id.* at 1315.

*Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008). Courts evaluate the reasonableness of counsel's performance from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Strickland*, 466 U.S. at 690; *see Kimmelman*, 477 U.S. at 385 (defense counsel's performance was deficient where he failed to do any pretrial investigation and, as a result, failed to discover before trial that the state

possessed critical evidence which counsel could have timely moved to suppress prior to trial).

Jones also must show prejudice by demonstrating that there was a reasonable probability that the results would have been different but for Rahimi's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## B. The Motion to Suppress

Jones argues that Rahimi performed ineffectively by failing to file a timely motion to suppress asserting that Hein violated the Sixth Amendment by interrogating him after he invoked his right to counsel during his state preliminary hearing. Doc. 1. He says that he informed Rahimi that some testimony and evidence was derived from an interrogation that occurred after he had "expressed his desire to the arresting officer that he wanted an attorney." Doc. 1 at 5.[4] To obtain § 2255 relief, Jones must prove that: (1) his suppression claim is

---

[4] Although Jones fails to state *when* he conveyed that information to Rahimi, the Eleventh Circuit expressly held that since Jones was provided open file discovery "at least nine months before the trial, there is no reason Jones's counsel should not have previously discovered the basis for this motion to suppress." *Jones*, 241 F. App'x at 678.

meritorious, (2) Rahimi's representation fell below the objective standard of reasonableness, and (3) there is a reasonable probability that the guilty verdict or sentence would have been different absent the excludable evidence. *Kimmelman*, 477 U.S. at 374-75; *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006).

In that regard, the government does not challenge Rahimi's representation—made at the start of the second federal trial—that he had been provided the state magistrate's "attorney-representation" form during discovery. Tr. at 15 (despite the prosecutor's claim that she did not provide it and was unaware of it, Rahimi referred to it as being among "the documents that were provided to me in discovery"). Nor does it challenge the form's authenticity or contents.

### 1. Merits of the Motion

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. Amend. VI. "If police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for police-initiated interrogation is invalid." *Jackson*, 475 U.S. at 636 (police may not sidestep the Sixth

Amendment by securing a *Miranda* waiver from a defendant after he invokes his right to counsel). The Sixth Amendment right to counsel attaches "after a formal accusation has been made" or when "a person who had previously been just a 'suspect' has become an 'accused' within the meaning of the Sixth Amendment. . . ." *Id.* at 632. More specifically, the right attaches once adversary proceedings have commenced, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). Jones's state magistrate hearing was an adverse judicial proceeding conducted "for the purpose of advising [him] of the charges against [him]." Doc. 4 ex. A. Thus he "had been formally charged by the time he asserted his right to counsel before a judicial officer." *Fleming v. Kemp*, 837 F.2d 940, 948 (11th Cir. 1988); *see also id.* at 947-48 (even if an appearance before a judicial officer at which the accused stated that he would obtain his own counsel and did not want appointed counsel was not a formal arraignment, the statement was made to a judicial officer so that the waiver of right to counsel in response to a subsequent police-initiated interrogation was invalid). Thus, Jones's Sixth Amendment right to counsel had attached to the state charges by the

time Hein interviewed him. The government agrees. Doc. 11 at 2 ("Nonetheless, Jones' election to be represented by an attorney on the two state drug charges constituted an invocation of [his] right to counsel under the Sixth Amendment.").

Here, it is undisputed that Jones invoked his Sixth Amendment right to counsel with respect to the state charges of intent to distribute marijuana and intent to distribute cocaine, charges that were based upon the drugs found by Hein incident to Jones's arrest.[5] Doc. 4 ex. A. Hein then proceeded to interrogate Jones about those very same drug charges. That subsequent interrogation clearly violated Jones's Sixth Amendment rights under *Jackson*. The fact that Hein administered *Miranda* warnings prior to interrogating Jones could not rectify the Sixth

---

[5] The Sixth Amendment right is "offense specific" and attaches only to the offense with which a defendant has been formally charged. *Texas v. Cobb*, 532 U.S. 162, 165, 173 (2001); *McNeil v. Wisconsin,* 501 U.S. 171, 175 (1991). The police, therefore, may interrogate a defendant about an *uncharged* crime after he has invoked his Sixth Amendment right to counsel, provided the uncharged crime does not constitute the "same offense" under the test announced in *Blockburger v. United States*, 284 U.S. 299 (1932). *Cobb*, 532 U.S. at 173 (if the offense with which a defendant has been formally charged has the same elements as an uncharged offense, then the police are prohibited from interrogating him as to either offense). When the police interrogate about a separate uncharged offense despite an earlier Sixth Amendment invocation, it is up to the defendant to invoke his Fifth Amendment right to counsel as to the uncharged offense at that time. *Id.* at 171-72 and n.2; *see Gore v. Sec'y for Dep't of Corrs.*, 492 F.3d 1273, 1306 n. 73 (11th Cir. 2007) (charges on which defendant was questioned "were sufficiently distinct" from charges over which his Sixth Amendment rights attached), *cert. denied*, 128 S. Ct. 1226 (2008). *Cobb* does not apply here, for Det. Hein interviewed Jones about the specific drug offenses with which he had been formally charged.

Amendment violation, for no waiver is effective if made during police-initiated interrogation. *Jackson*, 475 U.S. at 636. So all of the evidence acquired as a product of Hein's interrogation was subject to suppression. Nor could this evidence be presented on a "silver platter" in federal court, thereby permitting the federal government to capitalize on a constitutional violation committed by a state agent. *Elkins v. United States*, 364 U.S. 206 (1960) (rejecting the "silver platter" doctrine, thus precluding federal authorities from prosecuting defendants with evidence obtained unlawfully by state authorities).[6] But that is exactly what happened in the federal prosecution: Hein literally recounted Jones's inadmissible confession, and the government successfully introduced the firearms, additional marijuana, and other evidence found during the search of Jones's residence, a search that was based entirely upon

---

[6] *Elkins* held that the federal courts may not act as "accomplices in the willful disobedience of a Constitution they are sworn to uphold." *Id.* at 223. Thus, "no sovereign should be permitted to use statements elicited by another sovereign in violation of a defendant's Sixth Amendment right to counsel." D.R. Ringer, Successive Interviews and Successful Prosecutions: the Interplay of the Sixth Amendment Right to Counsel and the Dual Sovereignty Doctrine in a Post-*Cobb* World, 40 Tex. Tech. L. Rev. 917, 982-83 (2008).

probable cause developed by Hein during his constitutionally-improper interrogation of Jones.[7]  Tr. at 40.

Had Mr. Rahimi timely raised this "bread and butter" *Jackson* suppression issue, the federal prosecutor would have been precluded from using at trial the confession and resulting evidence secured by Hein in violation of Jones's Sixth Amendment rights.[8]  The Court must now

---

[7]  The government may not rely upon the "dual sovereignty" doctrine as a means of somehow curing the Sixth Amendment violation committed by Detective Hein. It is now settled in this circuit that the dual sovereignty doctrine is incorporated into the Supreme Court's Sixth Amendment jurisprudence.  *United States v. Burgest*, 519 F.3d 1307 (11th Cir. 2008); *United States v. McCloud*, CR406-247, 2007 WL 1706353 (S.D. Ga. Jun. 11, 2007) (cited in *Burgest*).  Thus, where a defendant has invoked his Sixth Amendment right to counsel as to a pending state charge (thereby precluding all police-initiated questioning as to that specific offense), he may nevertheless be questioned by federal agents investigating a separate uncharged *federal* crime, even though the federal statute at play criminalizes the same conduct and involves the exact same elements as the state charge.  *Burgest*, 519 F.3d at 1308-11 (defendant's Sixth Amendment right to counsel as to pending state drug charges was not violated when federal agents interviewed him regarding uncharged federal drug crimes); *McCloud*, 2007 WL 1706353 at * 7-8 (permissible for a federal agent to interrogate defendant about his suspected violation of the federal statute prohibiting possession of a firearm by a felon, even though he had invoked his Sixth Amendment right to counsel as to a pending state felon-in-possession charge).  Unlike the defendants in *Burgest* and *McCloud* (and in all of the cases they rely upon), Jones was never questioned by a federal agent about an uncharged federal crime as to which the Sixth Amendment had yet to attach.  Rather, he was interrogated by a state agent regarding pending state charges after he had invoked his Sixth Amendment right to counsel as to those precise charges.  The federal government can no more profit from the constitutional violation committed by Detective Hein than could the state government.  *Elkins*, 364 U.S. at 208 (federal authorities may not use evidence obtained illegally by state authorities).  The dual sovereignty doctrine cannot aid the government here, therefore.

[8]  Even if prohibited from using evidence obtained through a Sixth Amendment violation in its case in chief, the government would have been entitled to use such evidence for impeachment purposes.  *Michigan v. Harvey*, 494 U.S. 344 (1990).  But *Harvey* is not applicable here, for Jones did not testify or offer any evidence that required impeaching.

address whether Rahimi's failure to file such a motion was objectively unreasonable.

### 2. *Reasonableness of Representation*

The government argues that Rahimi did not act unreasonably in failing to file a timely suppression motion because Jones did not inform him "of this issue in time for him to have been able to raise it in a timely suppression motion." Doc. 4 at 8. No evidence supports this assertion. Furthermore, this argument overlooks counsel's duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

The *Kimmelman* Court found that counsel acted unreasonably when he failed to file a timely suppression motion; counsel had been unaware of certain facts prior to trial because "he had conducted no pretrial discovery." *Kimmelman*, 477 U.S. at 385. Counsel failed to conduct pretrial discovery because he mistakenly believed that the government was "obliged to take the initiative and turn over all of its inculpatory evidence to the defense." *Id.* The Court found that counsel's justifications for his omission betrayed "a startling ignorance of the law . . . or a weak attempt to shift blame for inadequate preparation." *Id.*

Here, it was not until the morning of Jones's trial—conducted years after he was first indicted on the original gun charge—that Rahimi made a suppression motion based on the *Jackson* violation. Tr. at 12-21. Counsel informed the trial judge that the motion was based on a "new ground" that he "just discovered," though he did not clarify *why* he had just discovered it (*i.e.*, whether something beyond his own failure to timely investigate and research his case prevented him from spotting the issue earlier). *Id.* at 6. After the judge informed him that "the time for [a] motion to suppress has long since transpired," Rahimi stated:

> I actually did file a motion to suppress in this case and requested a hearing and was denied. I will advise the Court, however, that I was *not aware* of the grounds that I am going to speak to the Court, so had the Judge granted my motion, I would not have been able to go ahead and bring it up at that time because I wasn't aware of it.

*Id.* at 13 (emphasis added). Yet Rahimi disclosed that he had received the state magistrate court's initial hearing order from Detective Hein "during discovery" in this case, though he did not specify *which* (the 2002 or 2005) proceeding. *Id.* at 14-15.[9] Either way, counsel early enough possessed the relevant facts, and an objectively reasonable attorney would have at least considered and minimally researched the

---

[9] Also, Rahimi was conspicuously vague about this in the appeal brief that he filed with the Eleventh Circuit. *See* doc. 3 ex. 1.

very *Jackson* issue that Rahimi untimely raised. Nor can the government "blame the client," for lay people are entitled to rely on professional assistance in discerning what constitutional rights they possess and may vindicate. *Kimmelman*, 477 U.S. at 380 n. 5. Jones was entitled to that much. *Id.*

Whereas in *Kimmelman* the attorney completely failed to conduct pretrial discovery, here Rahimi conducted pretrial discovery yet failed to inform himself of the fairly elementary facts and law that would have otherwise amply supported his untimely suppression motion. While Rahimi certainly cannot be said to have completely failed to prepare his case, his actual performance, "while generally creditable enough, suggests no better explanation for this apparent and pervasive failure to 'make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman*, 477 U.S. at 386 (quotes and cite omitted). He thus fell below the level of reasonable professional assistance.

### 3. *Different Result*

In order to prevail, Jones must also show prejudice, *i.e.*, "that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."

16

*Id.* at 375. A § 2255 movant "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (habeas petitioner has the burden of proving prejudice, which requires a showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different").[10]

One treatise summarizes "winning" prejudice showings from other cases in this way:

> Courts . . . readily find ineffective assistance when counsel's testimony at a postconviction evidentiary hearing establishes that a failure to act on an important matter was a product of inattention . . . [C]ourts are especially likely to find, even without evidentiary hearing testimony, that the attorney acted either out of inattentiveness or a misunderstanding of the law. That is where counsel failed to raise an obviously meritorious objection that would have produced a complete victory for the defense.

3 Wayne R. LaFave et al., Criminal Procedure § 11.10(c) (3d ed. 2007-2008) (footnotes omitted). Often such "errors" are overlooked given the presence of some sort of legal strategy:

---

[10] Even on direct appeal, a Sixth Amendment violation can be overlooked if sufficient other-source evidence renders the error harmless beyond a reasonable doubt. *E.g., Burgest*, 519 F.3d at 1311.

> Strategy may explain why counsel would not raise an objection that would only result in a new indictment. . . . It may also explain why counsel might not seek to exclude inadmissible evidence when such evidence is not critical to the prosecution's case nor necessarily inconsistent with his client's defense. A possible strategic justification is more difficult to hypothesize, however, where counsel failed to raise a claim of apparent merit which would have resulted in dismissal of the charges with prejudice--such as double jeopardy, the denial of a speedy trial, or the statute of limitations. A similar analysis is applied to counsel's failure to present in a postconviction setting a "*dead bang winner*" that would require a new trial.

*Id.* (footnotes omitted; emphasis added).

No one claims that Rahimi's inattention and resulting untimeliness on his *Jackson* motion was strategic. For that matter, strategic choices resulting from lack of diligence in preparation and investigation are simply not protected by *Strickland's* presumption in favor of counsel. *Armstrong v. Kemna*, 534 F.3d 857, 865-66 (8th Cir. 2008). But consider what would have happened had Rahimi filed a timely suppression motion asserting a violation of Jones's Sixth Amendment rights. Had it been granted, the resulting suppression ruling would *not* have reached the evidence acquired prior to Jones's invocation of his Sixth Amendment right to counsel, *i.e.*, the evidence

Hein obtained incident to Jones's arrest and the search of his car.[11] That evidence included the two bags of marijuana found in his pocket, the crack cocaine found in his vehicle, and $452 cash. Tr. at 33-38. Since all of that evidence would have gotten to the jury anyway, the issue becomes whether Jones can show sufficient prejudice resulting from the admission of the *additional* evidence acquired by Hein in violation of Jones's Sixth Amendment rights, *i.e.*, the confession regarding the drugs seized incident to his arrest, the admission that more marijuana was located in his home, and the resulting recovery of the firearms and marijuana from that residence.

The Court is confident that Jones has mustered a credible prejudice showing as to the firearms count. The government secured Jones's conviction on the felon-in-possession charge based exclusively on the firearms discovered during the execution of the state search warrant for Jones's residence. But the probable cause for that warrant rested upon the confession Hein obtained after Jones had invoked his Sixth Amendment right to counsel. Since Hein initiated that interview, the

---

[11] Jones correctly argues that his confession would have been excluded, doc. 7 at 1-3-14; *see also* doc. 12 at 13-14, but he offers no convincing basis for exclusion of the initial "arrest-seized" evidence, nor does he demonstrate that this evidence failed to constitute sufficient proof to easily sustain the drug portion of the verdict against him.

confession was subject to suppression under *Jackson*. Rahimi's failure to file a timely suppression motion asserting the Sixth Amendment violation was fundamental error—for success on that motion would have led to the exclusion of the very firearms that Jones was charged with possessing. Without that evidence, the government could not have secured his conviction on the firearms offense charged in Count 3 of the second federal indictment. Cr. doc. 1. (Nor does the government contend otherwise.) Thus, Rahimi's deficient performance was clearly prejudicial as to the gun charge.

Jones, however, has not met his burden of demonstrating prejudice as to his conviction on the two drug counts,[12] for even had the evidence seized from his residence been excluded, the record establishes beyond doubt that the government could still have secured his conviction on those charges. First, *all* of the government's evidence regarding the crack cocaine charge was seized from Jones's vehicle at the time of his arrest, and thus the primary evidence supporting his conviction on Count 1 was totally independent of the information later developed as a result of Hein's unconstitutional interrogation. Further, the government introduced compelling, non-excludable evidence that Jones

---

[12] The Court will have more to say about his *sentence* on those counts later on.

possessed marijuana at the time of his arrest, for Detective Hein testified that he pulled two bags of marijuana from Jones's pants pocket. Tr. at 34. Certainly, Hein's later (and suppressible) testimony that Jones confessed to possessing the drugs seized at the time of his arrest and that an additional 18 bags of marijuana were found at his residence bolstered the government's drug case against Jones, particularly on the marijuana charge. But given the strength of the evidence secured before any Sixth Amendment violation ever occurred, Jones has not met his burden of showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In other words, the government offered sufficient untainted evidence of Jones's guilt that was more than adequate to support the jury's verdict that Jones not only possessed the cocaine and marijuana found on his person and in his vehicle, but that he possessed sufficient quantities of those drugs to infer that he intended to distribute them. Jones has thus failed to demonstrate prejudice as to his *conviction* on the two drug counts.

Prejudice as to his *sentence* on those charges is another matter.[13] Jones's guideline sentence was based not only on the drugs found on his

---

[13] Of course, as Jones's conviction on the gun charge must be vacated, no sentencing issue survives as to Count 3.

person and in his vehicle at the time of arrest, but also on the additional drugs and the firearms later discovered in his residence as the product of Hein's Sixth Amendment violation. Excluding that tainted evidence would have a rather dramatic impact upon the guideline sentence. In calculating Jones's original guideline range, the probation officer grouped Counts 1 and 2 (the marijuana and crack cocaine offenses) together pursuant to U.S.S.G. § 3D1.2(d). Presentence Investigation Report (PSI) at 6. Since the Count 3 firearms offense was not closely related to the drug offenses (as the firearms were found not to have been used or possessed during the drug crimes), Count 3 could not be grouped together with Counts 1 and 2. Therefore, the combined offense level was calculated using U.S.S.G. § 3D1.4. The group comprised of Counts 1 and 2 resulted in an adjusted offense level of 18. The adjusted offense level for the Count 3 firearms offense was determined to be 22. Pursuant to 3D1.4, multiple count adjustments were utilized to arrive at a combined (or single) offense level. The total offense level for all three counts was determined to be 24. Jones's guideline range for imprisonment as a result of a total offense level of 24 and a criminal history category of IV was 77 to 96 months.[14]

---

[14] Jones was sentenced to 77 months. His sentence was reduced to 70 months on June 23, 2008, as a result of the November 1, 2007 amendment to the guidelines

After consulting with the probation office, the Court has preliminarily determined that if the firearms were not considered in calculating Jones's guideline range, Counts 1 and 2 would be grouped together and there would be no need to utilize U.S.S.G. § 3D1.4 for multiple-count adjustments. Count 1 involved Jones's possession of 1.40 grams of crack cocaine, and the amount of marijuana involved in Count 2 is unknown at this time (as the record does not reflect the precise weight of just the marijuana removed from Jones's pocket at the time of his arrest). Under the guidelines, 1.40 grams of crack cocaine calls for a base offense level of 16. (Based upon the November 1, 2007 amendment noted earlier, Jones's adjusted offense level could perhaps be 14 if the amount of marijuana seized at the time of his arrest is determined.) Therefore, based upon a total offense level of 16 and a criminal history category of IV, Jones's guideline range for imprisonment would likely be 33 to 41 months, which is considerably lower than the revised range of 70 to 87 months. Jones, therefore, has established that his sentence in this case would have been considerably reduced absent the introduction of the excludable evidence seized in violation of his Sixth Amendment

regarding combined offense levels for offenses involving crack cocaine and some other controlled substance. Doc. 91. Jones's guideline range for imprisonment was amended to 70 to 87 months.

rights. That is, he has shown that he suffered prejudice at sentencing on the drug counts as a result of Mr. Rahimi's failure to file a timely suppression motion.

To summarize, the Court disagrees with Jones that if all of the evidence tainted by Hein's Sixth Amendment violation were excluded, there is a reasonable probability that the *drug* portion of the verdict against him would have been different. It is a virtual certainty, however, that the firearms found in Jones's residence would have been excluded, since the violation of his Sixth Amendment right to counsel led to the confession upon which the search warrant issued and the resulting firearms evidence was obtained. Mr. Rahimi's failure to file a timely suppression motion on that score thus fell "outside the wide range of professionally competent assistance" demanded of lawyers, because the issue was elementary and an objectively reasonable lawyer would have spotted and litigated it. Had the suppression motion been timely filed, Jones's statements during the Hein interview would have been suppressed, thus eliminating all of the government's evidence on the firearms count.

Finally, Rahimi was prejudicially ineffective because it is reasonably likely that the dismissal of the gun charge, plus the exclusion

of the additional marijuana evidence found at the residence, would have had a dramatic effect upon Jones's sentence in this case. While Jones seeks to vacate the entire judgment of conviction, doc. 1 at 17, he is entitled only to an order vacating his conviction on the Count 3 firearms charge and to a new sentencing hearing. New counsel will be appointed to represent Jones at that hearing.[15]

## III. CONCLUSION

Accordingly, James Caswell Jones's 28 U.S.C. § 2255 motion should be GRANTED IN PART and DENIED IN PART. His other motions, docs. 8, 9, & 12, are DENIED.

**SO REPORTED AND RECOMMENDED** this  4th  day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[15] The Eleventh Circuit has "exercised [its] supervisory powers to instruct district courts to resolve all claims for relief raised in a habeas corpus petition regardless of whether habeas relief is ultimately granted or denied." *United States v. Wright*, 131 F. App'x 698, 700 (11th Cir. 2005) (citing *Clisby v. Jones*, 960 F.2d 925, 935-36 (11th Cir. 1992) (en banc)). Here, Jones asserts some other claims that re-state his ineffective-counsel argument in different forms or in profitless variations (e.g., asserting an alleged "Fifth Amendment" invocation at the state magistrate hearing and claiming that Rahimi's ineffectiveness deprived him of *de novo* review rights on direct appeal). These other claims are either moot in light of the above analysis (for the Court has concluded that Jones would have prevailed on a *Jackson* suppression motion and that Rahimi rendered deficient performance in failing to file one) or are otherwise foreclosed by established law. *McCloud*, 2007 WL 1706353 at *4 (an accused asserts Sixth, not Fifth, amendment counsel rights during an adversary court proceeding) (citing *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998) (defendant may not anticipatorily invoke his Fifth Amendment rights prior to custodial interrogation)). Nor is an evidentiary hearing needed in this case, as the dispositive facts are undisputed and the Court has accepted Jones's argument that his trial attorney was ineffective. Hence, Jones's motion for an evidentiary hearing is DENIED. Doc. 10. Also denied are his motions for discovery, for summary judgment, to strike, and to "close the pleadings." Doc. 8, 9, 12.